**J.C. BELL, Appellee,**

v.

**A.L. LOCKHART, Director, Arkansas Department of Corrections, Appellant.**

No. 92–3782.

United States Court of Appeals, Eighth Circuit.

Submitted June 14, 1993.

Decided Aug. 19, 1993.

Rehearing and Suggestion for Rehearing En Banc Denied Oct. 28, 1993.

Olan W. Reeves, Little Rock, AR, argued (Kyle R. Wilson, Asst. Atty. Gen., on the brief), for appellant.

Gary D. Corum, Little Rock, AR, argued, for appellee.

Before WOLLMAN and LOKEN, Circuit Judges, and BOGUE,* Senior District Judge.

WOLLMAN, Circuit Judge.

The State of Arkansas appeals from the district court's order granting J.C. Bell federal habeas corpus relief under 28 U.S.C. § 2254. We reverse.

## I.

This case has a long and convoluted history. On February 9, 1974, K.B. Allen, a businessman in Pine Bluff, Arkansas, was shot and killed during a robbery at his shoe store. Petitioner Bell, along with two other men, was arrested in connection with the murder. The state subsequently charged Bell with capital felony murder in the perpetration of robbery.

The facts concerning the hearing described in the following paragraph were established at an evidentiary hearing before a United States magistrate judge held on January 7, 1992, in connection with Bell's current habeas petition.

Sometime before trial, counsel for Bell, Jay Dickey, requested a hearing on pretrial motions for a continuance and for Bell's commitment to the Arkansas State Hospital for a mental examination. On or about March 20, 1974, the trial court held a hearing on the motions and denied both.[1] Dickey did not

---

* The HONORABLE ANDREW W. BOGUE, Senior United States District Judge for the District of South Dakota, sitting by designation.

1. The trial court denied Bell's motion for a continuance. The Arkansas Supreme Court found that the trial court effectively denied Bell's re-

quest for commitment "because instead of committing [Bell] to the Arkansas State Hospital ..., the trial court ordered either of two medical doctors at a local mental health clinic to examine [Bell] to determine if there were reasonable

request Bell's presence at the hearing and Bell was in fact absent from the hearing. At the time of Bell's trial, Ark.Stat.Ann. § 22–352 (Repl.1962) required that if either of the parties or the court wanted the proceedings recorded, one of them had to make a request at the time of the proceedings. *Bell v. State,* 296 Ark. 458, 757 S.W.2d 937, 939 (1988). No one requested that this hearing be recorded.

On March 26, 1974, a jury found Bell guilty of capital felony murder. The court sentenced him to life imprisonment without the possibility of parole. Bell did not appeal directly from either his conviction or his sentence.

On September 23, 1975, Bell filed a petition for post-conviction relief in the Jefferson County circuit court pursuant to Arkansas Rule of Criminal Procedure 37.[2] The circuit court summarily dismissed Bell's petition without a hearing. On appeal, however, the Arkansas Supreme Court reversed and remanded for an evidentiary hearing. *Bell v. State,* No. CR 75–211, *unpub. op.* (Ark. May 10, 1976).

In the meantime, on April 28, 1976, a fire destroyed a large portion of the Jefferson County Courthouse. Because Bell had not pursued a direct appeal from his conviction, no transcript had been prepared before the fire, which destroyed the original records and exhibits. Consequently, only a partial, reconstructed record is available for review.

The circuit court appointed counsel to assist Bell with his petition for post-conviction relief and subsequently conducted three evidentiary hearings. At the first hearing, on October 6, 1977, Bell's post-conviction counsel made an oral motion requesting a trial transcript. Appended to the transcript of that hearing, however, is a note from the court reporter, G.N. "Buddy" May, stating that the courthouse fire had destroyed all the tapes of Bell's trial and that a transcript was not available.

On August 14, 1978, the circuit court held the second evidentiary hearing, during which court reporter May testified that some of his shorthand notes had been stored in an area of the courthouse where they might have escaped destruction in the fire. May opined that it might be possible to reconstruct at least a portion of the record. During the hearing, Bell's post-conviction counsel, Leon Jamison, who had been appointed to succeed Bell's original post-conviction counsel, questioned the doctor and the psychiatrist who examined Bell after the trial court had denied his motion for commitment.

On November 20, 1978, the circuit court held the third evidentiary hearing, during the course of which Jamison extensively questioned Bell's trial counsel, Dickey. Jamison inquired at length concerning the motions for a continuance and for a mental examination. In addition, Bell himself testified that he remembered that Dickey had visited him in prison and had informed him that the trial court had denied the motion requesting his commitment for a mental examination.

Bell's principal allegation in his Rule 37 petition was that he had been denied a fair trial due to the ineffective assistance of his trial counsel. *Bell v. State,* 269 Ark. 85, 598 S.W.2d 738, 739 (1980). As recounted above, in exploring Dickey's performance, Bell's post-conviction counsel delved into all aspects of Dickey's preparation for and conduct of the trial, including the motions for a continuance and medical examination. Post-conviction counsel also had the opportunity to question Dickey and court reporter May, each of whom was present and was questioned during at least one of the hearings. In addition, all three hearings were held before Judge Randall Williams, who had presided over the entirety of the original criminal proceedings.

On June 13, 1979, the circuit court denied Bell's second petition. The Arkansas Su-

grounds to believe [he] was insane." *Bell v. State,* 296 Ark. 458, 757 S.W.2d 937, 940 (1988).

**2.** Bell originally filed his petition for post-conviction relief pursuant to Ark.R.Crim.P. 1. During the pendency of Bell's petition, however, the Arkansas Rules of Criminal Procedure were modified, and Rule 1 was succeeded by Ark. R.Crim.P. 37. By agreement of the parties, Bell's Rule 1 petition was treated as a Rule 37 petition. Accordingly, we refer to Bell's petition for post-conviction relief as his "Rule 37 petition."

preme Court affirmed the denial. *Bell v. State,* 269 Ark. 85, 598 S.W.2d 738.

Pursuant to the circuit court's order, the partially reconstructed transcript was made available to Bell in mid–1979. Thereafter, some additional fragments of record were reconstructed. On April 21, 1986, efforts to reconstruct the transcript received an irrevocable setback when court reporter May died.

On August 1, 1980, Bell filed his first petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

The district court denied Bell relief on his first habeas petition. We reversed and remanded to the district court with instructions that it direct the state to grant Bell a belated appeal or, if the state refused to do so, to issue the writ. *Bell v. Lockhart,* 795 F.2d 655, 658 (8th Cir.1986).

The Arkansas Supreme Court granted Bell's motion for a belated appeal, but affirmed his conviction and sentence. *Bell v. State,* 296 Ark. 458, 757 S.W.2d 937 (1988). In its opinion, the Arkansas Supreme Court evaluated Bell's claim that the trial court had committed prejudicial error in holding a hearing in Bell's absence on the motions for a continuance and for commitment to the Arkansas State Hospital.

The plurality opinion, joined in by three justices, agreed with Bell that (1) if the circuit court had held a hearing on his motions, any such hearing would have been a "substantial step in the case" and Bell would have been entitled to be present at the hearing. *Id.* at 940. The plurality held, however, that even if a hearing had been held and Bell had been absent, reversal would only be required if Bell could show prejudice resulting from his absence. *Id.* at 941. The plurality did not reach the question whether a hearing had in fact occurred, however, because it found that Bell had waived his right to be present by failing to specifically request that he be present at any such hearing. *Id.*

Two justices dissented, finding that a hearing was in fact requested and held, and that Bell's motions were in fact presented and denied on March 20, 1974. *Id.* at 944 (Dudley, J., dissenting). Noting that Bell was absent from this hearing, the dissent stated that because it found that a hearing was held and Bell was not present, his absence at such a "substantial step" should automatically result in reversal. *Id.* at 943–44. Thus, the dissent did not interpret Arkansas law to require an additional showing of prejudice by Bell before he would be entitled to a reversal of his conviction.

Two justices, concurring, agreed with the dissent that Bell was entitled to be present if a hearing was in fact held on his motions. *Id.* at 943 (Glaze, J., concurring). The concurring justices joined the plurality, however, because they found that the record did not establish that a hearing had been held on the motions. *Id.*

Following the Arkansas Supreme Court's affirmance of his conviction, Bell filed a second petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Bell originally asserted numerous grounds for relief, including eleven allegations of ineffective assistance of counsel. Ground (1)(j) of the petition, which is the subject of the present appeal, alleges that trial counsel for Bell was ineffective because he

failed to request that hearings on pre-trial motions for a continuance and for his commitment to the Arkansas State Hospital for a mental examination be recorded and thus failed to preserve for appellate review petitioner's claim that he was improperly excluded from these hearings.

This claim of ineffective assistance of counsel was not raised by Bell in his Rule 37 petition.

On October 18, 1990, a United States magistrate judge issued findings recommending the dismissal of each of Bell's grounds for relief. Specifically, the magistrate judge found that Bell had procedurally defaulted on ground (1)(j) by failing to raise that claim in his Rule 37 petition.

On June 7, 1991, the district court adopted a majority of the magistrate judge's findings. The district court, however, remanded the petition to the magistrate judge for an evidentiary hearing to determine whether the state trial court had abused its discretion in denying Bell's motion for a continuance and

for further findings with respect to certain claims raised in Bell's petition. The district court found that the absence of Bell's trial records constituted cause for Bell's procedural default on ground 1(j). Consequently, it remanded the issue to the magistrate judge for a determination whether Bell could show that he was prejudiced as a result of the procedural default.

Following an evidentiary hearing, the magistrate judge issued findings and recommendations, which the district court adopted in its order of November 5, 1992.

The district court found that Bell had been prejudiced by the default on the claim (1)(j). The court found, based upon attorney Dickey's testimony at the habeas evidentiary hearing, that a hearing had in fact been held on Bell's motions. The court found further that Bell's trial counsel had in fact been ineffective for failing to request that the hearing on the motions be recorded. The district court found the remainder of Bell's claims to be without merit.

The district court found, based upon its interpretation of the dissent and the concurrence in the Arkansas Supreme Court's opinion in *Bell*, that Bell had shown prejudice from counsel's failure to request that the hearing be recorded. The district court reasoned that if Bell's counsel had requested that the hearing be recorded, the Arkansas Supreme Court would have had before it at the time of its 1988 decision the additional fact that the hearing had occurred. The district court concluded that in the light of this fact, a majority of justices on the Arkansas Supreme Court (namely, the two dissenting justices and the two concurring justices) would have reversed Bell's conviction because he was absent when substantial steps were taken in his case.[3] The district court ordered the writ to issue if the state did not retry Bell.

## II.

The state contends that the district court erred in its findings concerning cause and

prejudice and the merits of Bell's ineffective assistance claim.

A state procedural default bars federal habeas review unless the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law...." *Coleman v. Thompson*, —— U.S. ——, ——, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991); *Maynard v. Lockhart*, 981 F.2d 981, 984 (8th Cir.1992).

The Supreme Court has held that "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986). A showing that the factual or legal basis for a claim was not reasonably available to counsel or that interference by officials made compliance impracticable would constitute cause under this standard. *Id.* (We note that *Coleman v. Thompson*, —— U.S. ——, ——, 111 S.Ct. 2546, 2568, 115 L.Ed.2d 640 (1991), forecloses the argument that the ineffective assistance of post-conviction counsel can provide cause.)

As stated earlier, the district court found cause for Bell's procedural default, stating, "[t]he Court finds petitioner had sufficient reasons for failing to raise [this issue] in his Rule 37 petition, namely, the absence of the trial records." D.Ct. Order of June 7, 1991, at 8. Thus, the threshold question before us is whether the absence of trial records provides sufficient cause to excuse Bell's failure to raise the ineffective assistance of counsel claim in his Rule 37 petition.

We think our analysis is best placed in a chronological framework. The courthouse fire occurred on April 28, 1976, after the Arkansas circuit court had dismissed Bell's initial Rule 37 petition, but before the Arkansas Supreme Court reversed and remanded for the three evidentiary hearings.

---

**3.** We note, parenthetically, that the Arkansas Supreme Court's recent opinion in *Davlin v. State*, 313 Ark. 218, 853 S.W.2d 882, 885 (1993), lends further support to the district court's conclusion that Arkansas law requires reversal if a defendant is absent when a substantial step is taken in his case and further, that the defendant need not demonstrate prejudice.

Bell is correct in asserting that he could not have discovered his trial counsel's alleged error from the time immediately after the fire until some time in the fall of 1976, when the circuit court first appointed post-conviction counsel for him. We find Bell's argument less persuasive, however, as it relates to the period after the circuit court appointed post-conviction counsel.

As recounted above, the circuit court held three separate evidentiary hearings: on October 6, 1977; August 14, 1978; and November 20, 1978. As the Arkansas Supreme Court observed, Bell's principal allegation in his post-conviction petition was that he was denied a fair trial due to ineffective assistance of his trial counsel. *Bell v. State*, 269 Ark. 85, 598 S.W.2d 738, 739 (1980). In examining trial counsel's performance, post-conviction counsel Jamison delved into all aspects of attorney Dickey's preparation for and conduct during the trial, including the motion for a continuance and the events surrounding it. *See Id.* 598 S.W.2d at 740. In the course of the post-conviction hearings, Jamison (1) established that the two motions had been presented and denied; (2) cross-examined Dickey at length concerning the motions; (3) established that Bell had been told about the motion for commitment for a mental examination after it had been denied; and (4) established that a hearing had been held on the motion to suppress. In addition to questioning Dickey, Jamison also had the opportunity to question court reporter May and Judge Williams.

Bell's current counsel asserted at oral argument in the present appeal that "nobody" knew whether a hearing had taken place in connection with Bell's pretrial motions. We disagree. Although Bell presumably did not know that a hearing had been held because, of course, he was not present, all of the people who participated in the motion hearing, namely, trial counsel Dickey, Judge Williams, prosecutor Winfred Trafford, and court reporter May, all knew that a hearing had been held and that Bell was not present at that hearing.

As Bell notes in his brief, post-conviction counsel was able to obtain copies of pleadings and motions filed by Bell's trial counsel. Once post-conviction counsel knew of the existence of the motions, he could readily have established that a hearing had been held on the motions without the use of a transcript because most of the participants were present and testified at the post-conviction hearings. At the time of Bell's Rule 37 hearings in 1977–78, all of the central participants in the hearing were still alive and had relatively fresh memories of the events, and court reporter May was alive to interpret his notes. By 1992, May had died, and memories of the events were presumably not as fresh in the memories of the surviving parties having personal knowledge of the pretrial proceedings. Nonetheless, based primarily upon Dickey's testimony at the 1992 hearing before the magistrate judge, Bell was able to establish that a hearing had in fact taken place. This is the central contradiction that undercuts Bell's argument: Although Bell claims that he was unable to determine at the time of his Rule 37 evidentiary hearings in 1977–78 that a hearing had been held on his motion for continuance and for a mental examination, the district court in 1992 was nonetheless able to determine that a hearing had been held, based upon information that was quantitatively and, arguably, qualitatively not equal to that available to Bell in 1977–78.

Having established that Bell could readily have discovered trial counsel's failure to have the hearing on the pretrial motions recorded, we turn next to the question whether Bell had a forum in which he could raise this claim. Bell contends that he did not have an opportunity to raise this claim because he did not learn of its possible existence until August 1978, more than four years after his conviction. Bell contends that he could not have presented this ineffective assistance claim in any state forum after March 26, 1977, the third anniversary of his conviction, because Ark.R.Crim.P. 37, as amended on December 18, 1978, required petitions for post-conviction relief to be filed within three years of the date of conviction. Passing the question whether the 1978 amendment had any bearing on Bell's already-filed petition, we note that the only limitation that the Arkansas Supreme Court has imposed upon

amendments to such petitions is that an amendment must be filed before the court has ruled on the petition. *Ford v. State,* 644 S.W.2d 252 (Ark.1982).[4] Because the circuit court did not rule upon Bell's petition until June 13, 1979, Bell could have amended his petition up until that date. Accordingly, Bell had available a forum in which to assert trial counsel's error for approximately one year after post-conviction counsel could reasonably have been expected to discover the error.

Thus, Bell's post-conviction counsel did not need a transcript of the trial and pretrial hearing to determine whether there was a hearing on the pretrial motions and, if so, whether Bell was present at this hearing. Post-conviction counsel in the Rule 37 hearings had access to all the principals in this case, as well as to the court reporter and his notes. We conclude that Bell's post-conviction counsel could have determined that a hearing was held, that it was not transcribed, and that Bell was not present.

Bell's failure to discover that a hearing had taken place on his pretrial motions was not the result of an "objective factor external to the defense" as envisioned by *Murray,* but rather of post-conviction counsel's failure to make the necessary inquiries during the course of the three Rule 37 hearings. We find that the unavailability of trial records did not prevent Bell from presenting this claim in an amended Rule 37 petition. Accordingly, the district court erred in finding that the absence of records generally, or the absence of a transcript, more specifically, constituted sufficient cause to excuse Bell's procedural default in failing to raise this claim.

Having found that the district court erred in finding cause for Bell's procedural default, we need not reach the prejudice issue or address the merits of Bell's ineffectiveness of trial counsel claim.

Accordingly, we reverse the order granting Bell habeas relief and remand the case to the

district court with directions to dismiss the petition.

---

4. Rule 37.2(e) currently provides that, with leave of the court, a petition may be amended prior to a ruling on the petition.